# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MEREDITH CHAVEZ,  :

              Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.  :

Case No. 3:09-cv-122

District Judge Thomas M Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on July 1, 2004, alleging disability from April 20, 2004, due to bipolar disorder and depression. *See* Tr. 77-79, 497-99; 133. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 55-57, 63-65, 500-07. Administrative Law Judge Melvin Padilla held a hearing, (Tr. 521-75), and subsequently determined that Plaintiff is not disabled. (Tr. 17-35). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she met the insured status requirements of the Act through December 31, 2010. (Tr. 21, ¶ 1). Judge Padilla also found that Plaintiff has severe affective disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* ¶ 3; Tr. 23, ¶ 4. Judge Padilla found further that Plaintiff has the residual functional capacity to perform a reduced range of light work. *Id.,* ¶ 5. Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 33, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 34, ¶ 11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's conclusion that she does not have any severe exertional impairments. (Doc. 8). Accordingly, the Court will focus its review of the record on the mental health evidence.

Plaintiff was hospitalized July 9-13, 2004, after she threatened to drive her car off

4

a cliff. (Tr. 144-65). Plaintiff's admitting diagnoses were major depression and suicidal ideation. *Id.* At the time Plaintiff was admitted, it was noted that Plaintiff had two prior suicide attempts but no other psychiatric hospitalizations, her affect was labile and her mood depressed, she was oriented, and that her thought content was obsessive and compulsive. *Id.* Plaintiff was treated with psychotherapy and medications. *Id.* Plaintiff's discharge diagnoses were major depressive disorder, chronic and moderate, and rule out bipolar disorder; she was assigned a GAF of 65 to 70. *Id.* At the time Plaintiff was discharged, it was noted that she was smiling and happy, that her mood was good, her affect was euthymic, full range, and appropriate, and that her thought process was linear, logical, goal directed, and coherent. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Miami County Mental Health Center dated July, 2004, through October, 2007. (Tr. 224-320; 365-88; 436-90). During that time, Plaintiff participated in counseling with a therapist and saw Dr. Hussain, a psychiatrist, for medication management. *Id.* When Plaintiff's therapist initially evaluated Plaintiff, he reported that Plaintiff was cooperative and had normal motor activity, her affect was expansive, her mood anxious, and that her speech and thought processes were normal. *Id.* Plaintiff's therapist also reported that Plaintiff was oriented, her memory was impaired, and that her diagnosis was bipolar disorder NOS; he assigned her a GAF of 55. *Id.*

On November 30, 2004, Plaintiff's counselor reported that Plaintiff's poor concentration and impulsiveness were exacerbated by her bipolar disorder, that she had "major problems" dealing with stress at work and had panic attacks which led to negative relationships with supervisors and co-workers, that she had been fired once for a misunderstanding with her supervisor and once for theft of $750.00, that she had often had mood swings, and that she was cooperative in

5

treatment. *Id.*

Dr. Hussain reported on November 30, 2004, that Plaintiff's speech was normal, her mood was depressed, her affect was flat, and that she exhibited mild to moderate anxiety. *Id.* Dr. Hussain also reported that Plaintiff was alert and oriented, her thought process was normal, she was easily distracted, her insight and judgment were fair, and that her diagnosis was bipolar disorder NOS and rule out adult attention deficit disorder. *Id.* Dr. Hussain noted that Plaintiff had difficulty with sustained concentration and attention, a low frustration level, and poor impulse control. *Id.* On March 18, 2005, Dr. Hussain reported that he saw Plaintiff for medication management only and that due to the limited amount of time he spent with Plaintiff, he was unable to provide detailed information about her disability claim. *Id.*

Plaintiff's therapist reported on October 18, 2005, that during the period August, 2004, to August, 2005, Plaintiff's bipolar disorder rendered her unemployable due to mood swings which seriously impaired her abilities to concentrate and remember and due to her impulsiveness and poor anger management which interfered with her capacity to relate with others. *Id.* Plaintiff's therapist also reported that Plaintiff was prevented from going into public places due to the unpredictable nature of her mood swings and that the rapid alternation of her bipolar symptoms often would interfere with her capacity to remain consistent in her approach to most tasks. *Id.*

Examining psychologist Dr. Boerger reported on September 8, 2004, that Plaintiff graduated from high school, attended Ohio State University for one year, graduated from Edison State Community College in a business program, used to drink alcohol seven days a week, "smoked dope and did speed", quit cold-turkey and was never in a formal program, and she did attend some AA and NA meetings. (Tr. 166-71). Dr. Boerger also reported that Plaintiff was very verbal and

6

her speech was somewhat pressured at times, her affect was tearful but appropriate to the situation, she started taking medication for depression in 1992, she was alert and oriented, her long-term memory was good, and she appeared aware of her emotional problems. *Id.* Dr. Boerger noted that Plaintiff's diagnosis was bipolar disorder NOS and he assigned her a GAF of 52. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was moderately impaired, her ability to understand and follow instructions was mildly impaired, her ability to maintain attention to perform simple, repetitive tasks was mildly to moderately impaired, and that her ability to withstand the stress and pressures associated with day-to-day work activity was moderately to markedly impaired. *Id.*

Dr. Fornadel has been Plaintiff's treating physician since December, 2003. (Tr. 321-60; 389-95). In June, 2004, Plaintiff reported to Dr. Fornadel that she was having problems with racing thoughts and starting multiple projects, becoming angry easily, and getting into arguments at work with supervisors. *Id.* Plaintiff also reported to Dr. Fornadel that she had gone on a spending spree using another person's credit card. *Id.* Dr. Fornadel opined that Plaintiff might have a bipolar disorder and he prescribed psychiatric medications. *Id.* In March, 2005, Dr. Fornadel reported that Plaintiff continued to see her psychiatrist and psychologist, that she was not employable due to her inability to remain focused, that this was a temporary problem and would pass as she continued with medication and counseling. *Id.* Dr. Fornadel noted that Plaintiff was job interviewing and he encouraged her to continue doing this. *Id.* In September, 2005, Dr. Fornadel reported that even with treatment Plaintiff would likely have "breakthrough" symptoms that would interfere with normal function in a normal workweek and that without supervision and redirection, Plaintiff might not be able to maintain an ordinary routine. *Id.* Dr. Fornadel further reported that criticism would likely trigger negative behaviors in Plaintiff, such as becoming withdrawn or speaking out inappropriately.

7

*Id.* Dr. Fornadel concluded that Plaintiff had slight limitations in activities of daily living, moderate limitations in maintaining social functioning, and marked limitations in maintaining concentration, persistence, or pace. *Id.*

The record contains a copy of treating psychiatrist Dr. Rahman's clinical notes dated August, 2005, to September, 2007. (Tr. 361-64; 399-419; 431-35). During that time, Dr. Rahman treated Plaintiff for bipolar affective disorder and attention deficit disorder. *Id.* On December 12, 2006, Dr. Rahman reported that Plaintiff was not able to perform any work-related mental activities due to her drastic mood swings which were unpredictable, her impaired concentration secondary to distractibility and racing thoughts, unpredictable emotional lability, and her increased anxiety. *Id.* Dr. Rahman also reported that Plaintiff was alert and oriented, cooperative, looked very anxious and depressed, and that she had a flat affect. *Id.* Dr. Rahman noted that Plaintiff's prognosis was somewhat guarded and that she was not capable of engaging in any meaningful employment and he assigned her a GAF of 40-45. *Id.* Dr. Rahman noted further that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies of concentration, and had four or more repeated episodes of deterioration. *Id.*

Dr. Boerger examined Plaintiff again on August 6, 2007, and subsequently reported that Plaintiff has been receiving mental health treatment since 2004, was hospitalized for psychiatric treatment in 2004, graduated from high school, received an associates degree in business, has been sober for over nineteen years, previously used speed, has abused Valium, Percodan, Soma, marijuana, and "crank", and that she was somewhat inconsistent about her drug use. (Tr. 420-30). Dr. Boerger also reported that Plaintiff last worked in 2006, her speech was normal, her affect appropriate, she was alert and oriented, and that she appeared to be aware of her health and

emotional difficulties. *Id.* Dr. Boerger noted that Plaintiff had a tendency toward exaggeration or dramatization and that she appeared to be impulsive with low frustration level. *Id.* Dr. Boerger identified Plaintiff's diagnoses as bipolar disorder, most recent episode depressed, severe and without psychotic features, panic disorder with agoraphobia, and polysubstance dependence in remission; he assigned her a GAF of 50. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was moderately impaired, her ability to understand and follow instructions was moderately to markedly impaired, her ability to maintain attention to perform simple repetitive tasks was mildly impaired, and her ability to withstand the stress and pressures associated with day-to-day activity was markedly impaired. *Id.*

After engaging in a lengthy description of the record, a medical adviser (MA) testified at the hearing that Plaintiff's diagnoses were major depressive disorder and an affective disorder and that she did not meet or equal the Listings. (Tr. 550-64). The MA also testified that although Plaintiff did get fired from her last job as a medical secretary for talking with the patients too much, she worked successfully for ten months and that the clinical notes were terse and didn't reveal anything. *Id.* The MA opined that restricting Plaintiff to unskilled, simple tasks would not be consistent with the record because she (the MA) was not sure the tasks Plaintiff did for ten months were simple, and that Plaintiff should be restricted from fast-paced work and work that involved quotas. *Id.*

The record contains additional medical evidence including a mental capacity form which Dr. Shuman completed in November, 2007. (Tr. 509-15). That evidence was not before Judge Padilla. Rather, Plaintiff submitted it to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of

9

substantial evidence review of Judge Padilla's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

In her Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by failing to give the appropriate evidentiary weight to Dr. Hussain's and Dr. Rahman's opinions, and by failing to properly weight the opinion from Dr. Boerger. (Doc. 8). In addition, Plaintiff argues the Commissioner erred by improperly relying on the MA's opinion. *Id.*

As an initial matter, the Court notes, as does Plaintiff, that this us a "somewhat unusual" case" in that Plaintiff is seeking two different periods of disability. Specifically, Plaintiff seeks a closed period from April, 2004, through June, 2005, and a continuous period since July, 2006. (Doc. 8 at 12; Tr. 516; 574). Therefore, Plaintiff acknowledges that she was not disabled for the period June, 2005, through July, 2006. Plaintiff first argues that Judge Padilla erred because rather than considering two discreet periods of disability, he conflated the evidence in a manner that allowed him to be unduly swayed by her work activity.

A review of Judge Padilla's decision reveals that it is silent as to Plaintiff's two periods of disability. (Tr. 17-35). However, that same review reveals that Judge Padilla did not rely heavily, if at all, on Plaintiff's June, 2005, through July, 2006, employment in concluding that she was not disabled at any time since April, 2004, her alleged initial onset date. Rather, Judge Padilla relied primarily on the medical evidence as well as on the question of Plaintiff's credibility in finding that Plaintiff is not disabled. *See, infra.* Therefore, Plaintiff's suggestion that the Commissioner's failure to consider two discrete periods of disability is fatal to the Commissioner's decision should be rejected.

Plaintiff argues that the Commissioner erred by failing to give controlling or even

10

significant weight to Dr. Hussain's opinion. Plaintiff's position is that Dr. Hussain placed more limitations on Plaintiff than did Judge Padilla.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not

---

[1]Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rul. 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack*

12

*of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Padilla declined to give controlling or even substantial weight to Dr. Hussain's opinion on the basis that he did not opine that Plaintiff is disabled and because he had limited contact with Plaintiff. This Court concludes that the Commissioner did not err in this regard.

As noted above, while Dr. Hussain reported that Plaintiff had difficulty with sustained concentration, a low frustration level, and poor impulse control, he also reported that he saw Plaintiff only for medication management. Further, Dr. Hussain himself reported that due to the limited amount of time he had spent with Plaintiff, he was unable to provide detailed information about her disability claim. Indeed, Dr. Hussain recommended Plaintiff undergo an independent psychiatric evaluation to assess her functionality and limitations. (Tr. 260).

Under these facts, the Commissioner had an adequate basis for not giving Dr. Hussain's opinion controlling or even great weight.

Plaintiff argues next that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Rahman's opinion. As noted above, Dr. Rahman opined that Plaintiff is not capable of performing any work activity.

Judge Padilla rejected Dr. Rahman's opinion on that basis it was based primarily on Plaintiff's subjective complaints and was inconsistent with other evidence of record. (Tr. 27-28).

First, this Court notes that Dr. Rahman's clinical notes contain absolutely no objective clinical findings. Indeed, Dr. Rahman's clinical notes consist, in part, of a check list of clinical observations and at no time did Dr. Rahman check any of those observations. *See,* Tr. 361-

13

64; 431-35. That leads this Court to conclude that Dr. Rahman's opinion is based, not on any clinical findings or observations, but on Plaintiff's subjective complaints. Additionally, Dr. Rahman's opinion is inconsistent with the MA's opinion as well as with the reviewing mental health experts' opinions. *See,* Tr. 172-89. Further, Dr. Rahman's opinion is inconsistent with the conclusions of the mental health experts who treated Plaintiff during her hospitalization. Specifically, those mental health care providers noted that on discharge, Plaintiff was happy and smiling and that her mood was good and that she had, at worst, mild limitation. (Tr. 145-46).

Plaintiff also argues that the Commissioner erred by improperly weighing the opinion of examining psychologist, Dr. Boerger.

First, the Court notes an ALJ is not required to discuss every piece of evidence in the record. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989); see also, *Thacker v. Commissioner of Social Security,* No. 02-6138, 2004 WL 1153680 at *3 (6th Cir. May 21, 2004). The question is not whether there is evidence to support Plaintiff's position that she is disabled but rather, whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *See, Perales,* 402 U.S. at 401. While Judge Padilla did not specifically cite his reasons for not giving much weight to Dr. Boerger's September, 2004, opinion, he did cite that report and opinion in his summary of the evidence. *See* Tr. 24-25. In addition, Judge Padilla specifically noted that as to Dr. Boerger's August, 2007, opinion, he addressed the issue of possible malingering and that Dr. Boerger reported various inconsistencies in Plaintiff's reports to him. (Tr. 29). Judge Padilla further noted that the allegations by the Plaintiff to Dr. Boerger were not corroborated by reports to treating mental health sources, such as suicidal ideation "all the time" and she appeared to be trying to insinuate psychosis to Dr. Boerger (hearing the radio when it was not

14

on) but he did not find any objective evidence of psychosis. *Id.* This Court concludes that Judge Padilla's evaluation of Dr. Boerger's reports and opinions is consistent with those reports. Therefore, the Commissioner did not err by improperly evaluating Dr. Boerger's opinions or by finding that those reports did not provide a basis for concluding that Plaintiff is disabled.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 8, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).